**Jose A. ALVAREZ–UGARTE, Plaintiff,**

v.

**The CITY OF NEW YORK et al., Defendants.**

**No. 75 Civ. 452.**

United States District Court, S. D. New York.

April 7, 1975.

---

Jose A. Rivera, New York City, Puerto Rican Media Action and Educational Council, Inc., for plaintiff.

W. Bernard Richland, Corp. Counsel, New York City, by A. Michael Weber, New York City, of counsel, for defendants.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Plaintiff, a part-time employee of station WNYE/TV—a television station

owned and operated by the New York City Board of Education—has filed this civil rights action [1] alleging that he has been denied equal employment opportunity. He contends that the City Department of Personnel rejected his application for civil service appointment to the position of Program Production Assistant, Provisional because he is Puerto Rican, and not because, as defendants contend he lacked experience. In his prayer for relief, plaintiff seeks a declaration that defendants' refusal to hire him constituted a denial to plaintiff of his right to equal employment opportunity on the grounds of race, color or national origin, and an order instating him to the position of Program Production Assistant effective the date of his rejection, together with back pay and benefits. The action is presently before this Court on plaintiff's motion for a preliminary injunction, in which he seeks the ultimate relief requested in his complaint.

Since September, 1973, plaintiff has been performing on an unofficial,[2] part-time basis the duties of the position for which he now seeks provisional appointment on a full-time basis. When that position became vacant in the Fall of 1974, after the resignation of the incumbent, plaintiff submitted an application to replace him. In support of his application, he submitted, in addition to his resume, a letter from defendant Suffern —the Director of Broadcasting at WNYE/TV—stating that plaintiff was "amply qualified" for the position. Despite his employer's satisfaction with his education, experience and performance on the job, the City Department of Personnel rejected plaintiff's application on the ground that he "lack[ed] [the]

required experience". The minimum requirements for the job—as established by the City Civil Service Commission—are stated in the alternative and are as follows:

1. A B.A. degree from an accredited four year college, including or supplemented by at least 18 credits in television broadcasting; or

2. A high school diploma, plus two years experience in television broadcasting; or

3. A "satisfactory equivalent"

Since plaintiff apparently failed to meet any of these criteria to the satisfaction of the Department of Personnel [3]—he has completed only 3½ years of college, has taken no courses in television broadcasting and does not have two years experience—his application was rejected. According to an affidavit submitted by defendants and signed by an Assistant Director in the Department of Personnel, plaintiff would need "one additional year of full-time experience" before he would meet the official minimum requirements.

This action was initially brought on by an order to show cause why a temporary restraining order and a preliminary injunction should not issue instating plaintiff to the position in question. A hearing was not requested, plaintiff choosing instead to rely exclusively on the rather conclusory allegations of discrimination in his complaint. Having no facts before me from which even an inference of discrimination could be drawn, I denied the application, on condition that should defendants hire someone else in the interim, that person be informed of the pendency of this lawsuit and of the possibility of being "bumped"

---

1. The complaint was "brought by the plaintiff pursuant to [the] Fourteenth Amendment to the United States Constitution, 42 U.S.C. §§ 1981 and 1983, the Equal Educational Opportunity Act of 1974 § 204(d) [20 U.S.C. §§ 1703, 1706 and 1708], Executive Order 11246 and the regulations promulgated thereunder and 31 U.S.C. § 1242(a) for violations of his right to equal employment opportunity."

2. Plaintiff is paid out of a community service grant from the Corporation for Public Broadcasting.

3. The Department of Personnel apparently did not consider the enthusiastic recommendation of plaintiff's employer a "satisfactory equivalent".

should I ultimately determine that plaintiff had been unlawfully discriminated against. Satisfied with that arrangement, plaintiff withdrew his application for the TRO and the parties commenced settlement negotiations, several times adjourning the return date of plaintiff's motion for a preliminary injunction. These negotiations, however, proved fruitless and the motion was set down for argument. Contrary to the customary practice in employment discrimination cases, no evidentiary hearing was requested.

■ In order to meet his burden on a motion for preliminary injunction, plaintiff must demonstrate a likelihood of success on the merits and of irreparable injury should the injunction be denied. Chance v. Board of Education (2d Cir. 1972) 458 F.2d 1167, Hamilton Watch Co. v. Benrus Watch Co. (2d Cir. 1953) 206 F.2d 738, Rios v. Enterprise Association of Steamfitters (S.D.N.Y. 1971) 326 F.Supp. 198. In the context of employment discrimination cases, if the plaintiff can establish a *prima facie* case of discrimination, the burden then shifts to the defendant employer "to articulate some legitimate, non-discriminatory reason for [plaintiff's] rejection". McDonnell Douglas Corp. v. Green (1973) 411 U.S. 792, 802–3, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668. The Supreme Court has recognized essentially two ways in which a plaintiff in an employment discrimination action may seek to make out a *prima facie* case.[4] The first—and by far the most frequently utilized—approach was outlined in great detail in Griggs v. Duke Power Co. (1970) 401 U.S. 424, 91 S.Ct. 849, 28 L. Ed.2d 158. Essentially, if the plaintiff can demonstrate that the criteria utilized by the employer to determine job eligibility—whether they be in the nature of educational requirements, test results or physical characteristics, to name a few—"operate to exclude" minority group members, despite the lack of discriminatory intent, then the burden shifts to the employer to justify those criteria by demonstrating that they are substantially related to successful job performance. Although this burden to show job-relatedness—or "business necessity"[5]—is a "heavy"[6] one, it can be discharged by the employer if he can come forward "with convincing facts establishing a fit between the qualification and the job".[7] The second standard for measuring employment discrimination was announced in McDonnell Douglas Corp. v. Green (1973) 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668. Under the *Green* approach, the complainant may establish a *prima facie* case of racial discrimination by showing:

  (i)  that he belongs to a racial minority

  (ii)  that he applied and was qualified for a job for which the employer was seeking applicants;

  (iii)  that, despite his qualifications, he was rejected; and

  (iv)  that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications

At oral argument on the motion for a preliminary injunction, plaintiff relied

---

4. Although both Griggs v. Duke Power Co. (1970) 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed. 2d 158 and McDonnell Douglas Corp. v. Green (1973) 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 were Title VII suits, charging violations of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), the courts have not questioned the applicability of their reasoning to employment discrimination suits predicated upon the Equal Protection Clause and 42 U.S.C. §§ 1981 and 1983. See, e. g., Vulcan Society of the New York City Fire Department, Inc. v. Civil Service Commis-

sion (2d Cir. 1973) 490 F.2d 387, 394, n. 9; Castro v. Beecher (1st Cir. 1972) 459 F.2d 725, 733; Kirkland v. New York State Dept. of Correctional Services (S.D.N.Y.1974) 374 F.Supp. 1361, 1365, n. 4.

5. *Griggs, supra,* 401 U.S. at 431, 91 S.Ct. 849.

6. Chance v. Bd. of Educ., *supra,* 458 F.2d at 1176.

7. Vulcan Society v. Civil Service Commission (2d Cir. 1973) 490 F.2d 387, 393.

exclusively on the approach espoused in *Green*, confident that the facts in his case met all of the four steps there described. In fact, at oral argument, plaintiff informed the Court that he would be willing to have his motion treated as one for summary judgment. Defendants, accepting the challenge, orally moved to dismiss the complaint.

■ On the basis of the pleadings and affidavits submitted in support of and in opposition to the instant motion—which constitute the entire "record" in this case—I can determine with certainty only that plaintiff satisfies the first step in *Green*: no one can dispute that he is, by virtue of being Puerto Rican, a member of a minority group. As to the remaining three steps, very real issues of fact exist and preclude at this time and on a virtually non-existent record the granting of any of the relief requested. Although plaintiff did apply for the position in question, at least some of the defendants vehemently contest his qualifications for that job. As a result, he was rejected, but on the paltry record before us we are in no position to conclude that his rejection was "despite" his "qualifications". *Green, supra,* 411 U.S. at 802, 93 S.Ct. 1817. Finally, defendants' counsel contended at oral argument that although the position in question is still technically "open"—in that no one has been appointed to fill the slot—WNYE/TV has not "continued to seek applicants from persons of complainant's qualifications". However, the simple explanation is that plaintiff is already performing the duties of the position, albeit without the sought after civil service job title and benefits commensurate therewith.

■ It is apparent to the Court from the foregoing that serious questions of fact exist, precluding the granting of plaintiff's motion in its present posture.

However, although plaintiff has failed preliminarily to make out a *prima facie* case under *Green*, such failure does not mandate dismissal of the complaint. It is entirely conceivable that plaintiff may be more successful on the merits were he to proceed under the *Griggs* "adverse racial impact" theory. Where a job applicant is not qualified in terms of existing, but arguably unlawful employment requirements, a *prima facie* case may be proven by showing that such requirements have an "adverse impact" on minorities, thus triggering the employer's burden of showing that they are clearly justified by "business necessity". Plaintiff has already provided the Court with a chart reflecting the present racial make-up of WNYE/TV. This chart shows that while there are a few Latinos in the lowest paying, non-professional jobs, there are none in the managerial and professional positions—despite the fact that Latinos comprise 13% of the population in New York City. Moreover, the alternative [8] requirement of a B.A. degree for the professional position which plaintiff seeks, although admittedly neutral on its face, would appear to operate to exclude Latinos, by virtue of the fact that only .5% of those people with B.A.'s are Latino (1970 Census). Finally, plaintiff's apparently successful performance of the duties required of a Program Production Assistant despite his "lack of experience" is at least *some* indication that the minimum requirement of two years experience may not be job-related.

In light of plaintiff's supplemental affidavit, filed with the Court on April 1, 1975, in which he states that he cannot support himself much longer on the part-time salary he receives from WNYE/TV and may as a result be soon forced to quit his position, this Court will make every effort to schedule a

---

8. The courts have held that where a plaintiff can show that *at least* one of several alternative criteria for hiring or promotion has a disparate impact on a minority group, he has established a prima facie case and the burden then shifts to the defendant to justify such criterion. *Griggs, supra;* Leisner v. New York Telephone Company (S.D.N.Y. 1973) 358 F.Supp. 359.

hearing—should one be requested[9]—at the earliest possible time.

Plaintiff's motion for a preliminary injunction is denied without prejudice and defendants' motion to dismiss the complaint is also denied.

So ordered.

---

9. See, e. g., Sontag v. Bronstein (1973) 33 N.Y.2d 197, 351 N.Y.S.2d 389, 306 N.E.2d 405 for one Court's views on why an evidentiary hearing is indispensable. In the case at bar, the statistics mentioned tending to suggest racial impact are the product of the court's own research, which defendant has had no opportunity to contest.